JAMES MATTHEWS v. HERSHEY LUMBER COMPANY.[1]

July 3, 1896.

Nos. 9884—(144).

**Evidence of Fraud—Foundation—Impeachment of Witness.**

    The correctness of certain tally cards, which were the basis of the scale bills received in evidence, was in issue in this case, and for the purpose of impeaching the integrity of the tallyman who made the cards and their correctness the defendant offered to prove subsequent particular acts of misconduct on the part of the tallyman occurring two years after the cards were made, from which it was claimed that an admission that the cards were fraudulent

[1] Reported in 67 N. W. 1008.

might be implied. *Held*, that such evidence was not admissible without first laying the foundation therefor by proof sufficient in the opinion of the trial court to establish the fact that the tallyman was acting for or in collusion with the plaintiff as to such alleged acts.

**Evidence—Rulings Sustained.**

Certain rulings of the trial court as to the admission and rejection of evidence considered and *held* to be correct.

Appeal by defendant from a judgment of the district court for Ramsey county in favor of plaintiff for $2,066.98, after a trial before Brill, J., and a jury. Affirmed.

*J. N. Searles*, for appellant.

*H. H. Gillen* and *J. N. Castle*, for respondent.

START, C. J. This action was brought to recover the balance of the purchase price of certain logs which the plaintiff claimed to have sold and delivered to the defendant.

The complaint alleges that on May 1, 1892, the parties hereto entered into a contract whereby the plaintiff agreed to sell and the defendant to buy a quantity of saw logs of different marks, owned by the plaintiff, and then in St. Croix river above the St. Croix boom, and to be delivered therein, for which the defendant agreed to pay the plaintiff a stated price per thousand feet at the end of each month in which any of such logs were delivered; that during the season of 1892 he so delivered to the defendant logs which, at the contract price, aggregated in value $2,033.97, no part of which has been paid except $625.96. The answer admitted the contract, but put in issue the plaintiff's ownership of the logs, and alleged that the scale bills of the logs bearing plaintiff's marks presented to the defendant by the plaintiff as evidence of the quantity of logs delivered by him to it within the boom were fraudulent by reason of the fact that one of the tallymen, Charles T. Goodrich, acting in collusion with the plaintiff, made false entries on the scale cards, which were the basis of the scale bills and records in the office of the surveyor general of logs, whereby the plaintiff was credited with logs belonging to other parties. The answer also alleged that the defendant had paid the plaintiff for more logs than he had delivered to it.

On the trial one of the principal questions was the correctness of the scale cards made by Goodrich. The jury specially found that the

tally of the plaintiffs' logs made by Goodrich upon the scale cards was not fraudulent, and returned a general verdict for the plaintiff for the full amount claimed. The defendant appealed from the judgment entered on the verdict. The defendant's assignments of error relate exclusively to the rulings of the trial court in admitting or rejecting evidence.

The plaintiff, to establish a delivery of the logs, introduced the scale bills, or certified copies of the surveyor general's records showing the quantity of logs scaled during the season of 1892, of the various marks sold by plaintiff to defendant and other parties, which showed on their face a delivery to the defendant of logs to the amount as stated in the complaint. He also offered evidence tending to show when and where he obtained the logs which he claimed to have delivered to the defendants and the other parties, and that the logs were driven clean from their respective landings during the season of 1892, and that logs bearing some of plaintiffs' marks were subsequently cut in the years 1893 and 1894. The defendant offered to show by a certified copy of the records of the surveyor general's office (Exhibit 5) that something like a hundred thousand feet of logs of the plaintiff's mark came out of the boom in the seasons of 1893 and 1894, as a basis for claiming that logs in quantities claimed by the plaintiff were not driven down and scaled in the season of 1892, even if he had them on the landings. The ruling of the court excluding Exhibit 5 is the first error relied on by the defendant. The ruling was correct, for the total of all logs of the plaintiff's marks, which came through the boom in 1892, 1893 and 1894, was less than the total of the logs which the plaintiff had cut and driven according to his testimony; hence the fact that logs came through the boom in 1893 and 1894 had no tendency to show that the logs which it was claimed came through in 1892 and were scaled did not come down. The evidence had no reasonable tendency to support defendants' claim or to contradict the plaintiff's evidence.

It does not appear from the record that the trial court erred in overruling the defendant's objections to the questions put to the witnesses Campbell and De Staffany and referred to in defendant's assignments of error Nos. 2 and 3.

The defendant called as a witness F. B. Yates who testified that in the year 1894, two years after the scale cards here in question were

made, he was subpœnaed to produce in court certain scale cards made by a tallyman, Charles T. Goodrich, the same party who made the scale cards in question in this case, and give evidence in reference to them in an action entitled Crick v. Turnbull, then pending in the district court of the county of Hennepin. He further stated that he had an interview with Goodrich after he was so subpœnaed and was then asked this question: "What further transpired between you and Mr. Goodrich on the evening when he came into the office there at the time you expected to go to Minneapolis?" The trial court sustained plaintiff's objections to this question and such ruling is urged by the defendant as error. What the witness would have testified to if he had answered the question does not appear from the record, as no offer was made to show any particular acts or words of Goodrich at this interview, but defendant's counsel did state that he wanted to show that Goodrich and the plaintiff were co-operating to defeat justice by attempting to induce the witness Yates not to appear as a witness in the case referred to and produce the scale cards. Assuming, without so deciding, that this statement was a compliance with the rule that an offer of evidence must be sufficiently full to enable the court to see the materiality of it, we are of the opinion that the ruling of the trial court was correct. The tally-man, Goodrich, was not the agent of the plaintiff in making the scale cards as claimed by defendant, but he was an officer of the law, and his subsequent acts or declarations were not admissible as evidence, unless authorized by the plaintiff. Therefore the integrity of Goodrich's conduct in making the scale cards in question or their correctness could not be impeached in this case by showing subsequent particular acts of misconduct on his part, from which defendant claimed an admission that the cards were fraudulent might be inferred, without first laying the foundation by proof sufficient in the opinion of the trial judge to establish the fact that he was acting for or in collusion with the plaintiff as to such alleged misconduct. 1 Greenl. Ev. § 111. Whether a sufficient foundation was laid by the defendant by such proof was under the evidence in this case a question for the trial court.

In rebuttal the plaintiff called Goodrich as a witness, who testified in substance that he made a correct tally on the scale cards in question

of the logs as called off to him by the scaler.    On cross-examination the witness further testified as follows:

"Q. You say that you have not untruly put down logs and the contents of the logs on tally cards during your service as an employé of the surveyor general of Stillwater?    A. I do.    Q. That you never tampered with any cards?    A. No, sir.    Q. I will ask you if you did not take some cards that had been made by another tallyman in the mill boom of the St. Croix Lumber Company, and after those cards had been returned to the office if you didn't add a large quantity of marks, including some of the marks in controversy here, and a large number of figures indicating logs, and after thus padding those tally cards you footed them up, and your footings were carried into the scale cards issued on that work; isn't that so?    A. I don't hardly know what you mean.    Q. Didn't you pad the tally cards of another tallyman that showed logs that had been scaled by other parties in the mill boom of the St. Croix Lumber Company?    A. I never saw them.    I never had anything to do with them.    I worked in the office a little while.    Q. Wasn't you sent to work footing up?    A. Yes, I footed up.    Q. The logs and the contents of logs that had been tallied by another man in the St. Croix Lumber Company's boom, and didn't you before you finished that card, pad that card by adding there a large number of marks, including these marks in controversy? A. No, sir; I did not."

The defendant subsequently during the cross-examination of the witness asked him this question: "Do you remember of being in the surveyor general's office to take the place of a clerk for a few days and being assigned to the duty of footing up tally cards made by another tallyman of logs scaled in the boom of the St. Croix Lumber Company?"    The time referred to was 1890 and defendant's counsel admitted that these cards did not refer to any logs in controversy in this case.    But he further stated in substance that the purpose of the question was to show that the witness was assigned to the duty of footing up tally cards of another tallyman in the St. Croix Lumber Company's pond and took advantage of the opportunity to pad the cards with additions of his own representing some of the marks used on the logs here in controversy which were then owned by parties other than the plaintiff, by means of which the false additions were carried into the scale bills made up therefrom.    And if the witness denied it he intended to prove it by other witnesses.    The court sustained the plaintiff's objection to the question.    Conceding that the alleged transaction was not too remote and the question proper on cross-examination for the purpose of testing the accuracy or integrity

of the work of the witness as a tallyman, still he had already unequivocally answered the question and the ruling of the court was correct.

The witness was further asked if he remembered an interview with the witness Yates. This was objected to, and counsel for the defendant stated that he expected to show by the witness that he offered Yates a money consideration to give his testimony in the case in which he had been subpœnaed in a way which would be prejudicial to justice, and to influence his testimony in that case with reference to tally cards in connection with the marks in that suit made by the witness Goodrich. A witness cannot be impeached by showing particular acts of corruption or dishonesty and how far he may be interrogated on cross-examination as to matters immaterial to the issues on trial for the purpose of affecting his credibility is largely in the discretion of the trial court. Gardner v. Kellogg, 23 Minn. 463. We cannot say that the discretion of the trial court was not fairly exercised in sustaining the objection to this question.

The defendant's other assignments of error were not urged in its brief.

Judgment affirmed.